## J. F. WOODIN, Respondent, v. W. A. LEACH, Appellant.

### Springfield Court of Appeals, December 31, 1914.

1. **EVIDENCE: Principal and Agent: Agent's Declarations Prior to Proof of Agency: Inadmissible.** Declarations made by an alleged agent before there is any testimony tending to prove that relation are inadmissible.

2. **SALES: Fraud: Not Established, When.** Fraud is not established by merely proving that certain timber of the value of $250 was sold for $800.

3. **FRAUD AND MISREPRESENTATION: Principal and Agent: Ratification.** Evidence examined and considered not sufficient to show that the owner of certain timber accepted the benefit of the sale of same after knowledge of the fraud of a third person who misrepresented its value, such party not having been proven to be the agent of the owner so as to bind him by the fraud.

4. **PLEADINGS: Failure of Consideration: Issue to be Tendered by Answer.** Where the issue of failure of consideration is not tendered by the answer, such failure cannot be shown. (Sec. 1974, R. S. 1909.)

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

AFFIRMED.

*H. H. Freer* and *David W. Hill* for appellant.

(1) If one who assumes to do an act which will be for the benefit of another, commits a fraud in so doing, and the person to whose benefit the fraud will enure seeks, after knowledge of the fraud, to avail

himself of that act, and to retain the benefit of it, he must be held to adopt the whole act, fraud and all. Zehnder v. Stark, 248 Mo. 55; Atlantic Mills v. Indian Orchard Mills, 147 Mass. 275. (2) By accepting the benefits of the transaction and retaining same after service of the counterclaim, and after adequate opportunity to repudiate the transaction, he ratified the acts of Noland, his agent, in making the deal and such ratification is just the same as previous authority. 31 Cyc. 1258-1259-1260-1261-1263-1267-1271; Kirpatrick v. Pease, 202 Mo. 471. (3) The declarations of Noland were admissible after defendant had established a prima-facie case of agency. Peck v. Ritchey, 66 Mo. 114.

*F. G. Taylor* and *E. R. Lentz* for respondent.

(1) In the absence of an express appointment, ratification or estoppel there is no evidence of agency. Alexander v. Rollins, 14 Mo. App. 109; Same case affirmed, 84 Mo. 567. (2) One's agency cannot be shown by his declarations or admissions. Mitchim v. Dunlap, 98 Mo. 418; Timber and Iron Co. v. Cooperage Co., 112 Mo. 383; Bank v. Leyser, 116 Mo. 51; Bank v. Morris, 125 Mo. 343; Gronewey, etc. Co. v. Estes, 144 Mo. App. 418, 128 S. W. 789; Mitchell v. Samford, 149 Mo. App. 72, 130 S. W. 101; Handlan v. Miller, 143 Mo. App. 101, 122 S. W. 754; Griswald v. Haas, 145 Mo. App. 578, 122 S. W. 783; Jolly v. Huebler, 132 Mo. App. 675; Oil Co. v. Zinc Co., 98 Mo. App. 324; Hackett v. Van Frank, 105 Mo. App. 384; State ex rel. v. Henderson, 86 Mo. App. 482; Christian v. Smith, 85 Mo. App. 117; Murphy v. Insurance Co., 83 Mo. App. 481; Chothers v. Adcock, 43 Mo. App. 318; Iron Co. v. Halverson ,48 Mo. App. 383. (3) Where a party relies on a ratification by the principal of the acts of the agent he must tender such issue in his pleadings. Liscomb v. Talbott, 243 Mo. 1, 147 S. W. 805; Loving

v. Cattle Company, 176 Mo. 353; Noble v. Blount, 77
Mo. 244; Wade v. Hardy, 75 Mo. 399; McClannahan
v. Payne, 86 Mo. App. 292. In this case there is neither
pleading nor proof of any ratification, by the plaintiff
of the acts or representations alleged to have been
made.

ROBERTSON, P. J.—Under date of June 16,
1911, plaintiff and defendant entered into a written
contract wherein defendant agreed to pay the plaintiff
eight hundred dollars for "all of the white oak, red
oak, ash and hickory timber" on one and a half sec-
tions of land in Phillips county, Arkansas, except the
timber inside of fields and fenced portions of said
land. Three hundred dollars of the purchase price
was to be paid when the agreement was signed and the
balance as the defendant removed the timber, and it
was stated that all of said balance was to be paid
within ninety days, from the date of the contract.
Further along in the contract it was stated that de-
fendant should have twelve months in which to remove
the timber from the land, but no point is made on that
here. The contract was signed, the defendant paid
three hundred dollars and on August 6, 1911, he paid
two hundred dollars more. This action is brought to
recover the balance of the purchase price. The trial
resulted in a directed verdict for the plaintiff for three
hundred dollars, with interest, and the defendant has
appealed. The defendant filed his unverified answer
to plaintiff's petition alleging that he was induced to
enter into the contract by false and fraudulent repre-
sentations made to him by plaintiff's agent as to the
amount and character of the timber and prayed judg-
ment against the plaintiff for the cancellation of said
contract and judgment for two hundred and fifty dol-
lars on account of the alleged fraud.

The plaintiff was at the time the contract was
entered into a resident of said county in Arkansas,

and the defendant was engaged in business in Poplar
Bluff, this State, under the name of the Leach Lumber
Co. Plaintiff testified that for some time prior to the
date of the contract he was frequently approached by
one Noland, then living near the land on which the
timber was located, who proposed to purchase it; that
he (plaintiff) finally agreed to sell the timber to No-
land on the terms stated in the contract and that the
contract was made out in Noland's name and at No-
land's request was sent to the Leach Lumber Co. at
Poplar Bluff and that it was returned to the plaintiff
with Noland's name scratched out and signed in the
name of Leach Lumber Co. by W. A. Leach, president.
The timber was removed by the defendant. Shortly
after defendant signed the contract he had the timber
examined by his inspector, who testified at the trial
that it was not worth to exceed two hundred and fifty
dollars. The defendant testified that Noland proposed
several times to sell him this timber and that all he
(defendant) knew about it before signing the contract
he learned from Noland and bases his counterclaim
on the alleged false and fraudulent representations
made to him by Noland as plaintiff's agent. Plaintiff
testified that he paid Noland no commission nor other-
wise compensated him for making the sale. The de-
fendant testified that Noland did not represent him,
was not his agent, was not on his payroll and that he
was not employed by him.

The defendant in his efforts to establish an agency
between Noland and plaintiff sought to do so prin-
cipally by statements made by Noland. This the court
refused to permit him to do and properly so because
all declarations made by an alleged agent before there
is any testimony tending to prove the relation are
inadmissible for that purpose.

The defendant now practically concedes that the
only theory upon which he can maintain his counter-
claim is that since the alleged fraud of Noland has

come to the knowledge of the plaintiff he is seeking to acquire the benefits thereof and that, therefore, he must be held to have ratified and adopted the whole of Noland's conduct, citing Zehnder v. Stark, 248 Mo. 39, 55, 154 S. W. 92. The defendant contends that even if the plaintiff did not know of the alleged fraud which Noland had perpetrated until defendant's answer was filed that then it became his duty to renounce the contract and repudiate Noland's conduct. It is also said that plaintiff must have known that he was defrauding some one since he sold timber of the value of only two hundred and fifty dollars for eight hundred dollars, but the value of the timber is a matter to a great extent of opinion and without more than a mere honest difference of opinion thereon is not a proof of fraud.

There was no testimony introduced or offered that suggests even that Noland made any representation to defendant as to the value of the timber. Defendant testified that "He told me there was twenty large trees of twenty-four inches of veneer timber." But there is no testimony or offer to show that this was not true. A witness, defendant's timber inspector, was asked about this but owing to objections sustained by the court he did not answer and defendant made an offer to prove by him that there were *no white oak* trees on the land that would make veneer, which leaves an entire absence of proof that Noland's alleged representations of which defendant testified were false. There appears in the record a statement of another witness to the effect that there was no *veneer white oak* on the land, but this does not prove that there was no veneer timber.

A feature of the case that would justify plaintiff in believing that defendant's charge of fraud was feigned is that after the contract was signed, three hundred dollars paid thereon, the defendant, in sixty days thereafter and after the timber had been examined by his inspector and after he had no doubt removed a

considerable portion, or all, of it, paid the plaintiff two hundred dollars more which must have been based on defendant's idea that under the contract he had removed five hundred dollars' worth of timber, which he alleged in his answer was worth only two hundred and fifty dollars.

Noland must have been the agent of either the plaintiff or defendant; the defendant failed wholly to introduce or offer any testimony that tended to prove that Noland was the agent of plaintiff. It would be a strange and unjust rule that would permit the plaintiff to be burdened with the alleged fraud of Noland simply because defendant was charging Noland with fraud and of being plaintiff's agent when plaintiff had good reason to believe, on account of defendant's conduct, if nothing more, that no fraud had been perpetrated. It will also be observed that the contract does not specify any particular kind or character of timber but undertakes to sell only whatever may be on the land.

In referring to the payment made by defendant after the time when he should have discovered the alleged fraud we have not overlooked the cases holding that this does not estop him from pursuing his remedy for alleged fraud. [Campbell v. Hoff, 129 Mo. 317, 325, 31 S. W. 603, and cases cited.] However, in a quotation from Page on Contracts in the case of Brown v. South Joplin Lead & Zinc Mining Co., 231 Mo. 166, 173, 132 S. W. 693, it is said that by making partial payments on the purchase money with full knowledge of the facts makes the contract valid, but we pursue that question no further as such an issue was not in controversy in that case and is not necessarily in controversy here, except we are referring to defendant's conduct to show that the plaintiff should not be held to be acting in bad faith and accepting the benefits of any fraud Noland may have been guilty of simply because he did not, on discovering the charges

in defendant's answer, voluntarily submit and yield unto the defendant all that he claimed, when defendant had paid more, than he claimed in his answer that he owed and did this after he had discovered the alleged discrepancy in the price and the value of the timber he had bought.

Defendant submits to us that by reason of section 1974, Revised Statutes 1909, the jury should not have been directed to return a verdict, because his testimony, and offer of testimony, tended to prove a failure of consideration, citing several authorities in support of the contention. There was no such issue tendered by his answer. The proof was made and tendered to prove fraud. In all of the cases cited under this point it is shown that the question of consideration was raised by the pleadings, except in Murphy v. Gray, 37 Mo. 536, and there the brief of respondent shows that it was so put into the case. This point is without merit.

The judgment is affirmed.

*Sturgis* and *Farrington, JJ.*, concur.