Frank **MOBLEY**, Respondent,

v.

Michael J. **BAKER** and Baker Mobley Insurance, Inc., Appellants.

No. **WD 57793**.

Missouri Court of Appeals, Western District.

April 9, 2002.

John K. Power and Paul J. Odum, Kansas City, MO, for respondent.

Christopher A. Cushman, Kansas City, MO, for appellants.

Before SPINDEN, C.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Michael J. Baker (Baker) and Baker Mobley Insurance, Inc. (BMI), appeal from the summary judgment of the Circuit Court of Jackson County awarding the respondent, Frank Mobley, $130,880.86 on the respondent's suit to recover the bal-

ance due on a promissory note and for attorney's fees and costs. The note was executed by Baker for BMI, in his capacity as president, and was personally guaranteed by him in payment of the agreed purchase price of $150,000 for the purchase from the respondent of certain accounts and intangibles of respondent's insurance agency, commonly referred to as a "book of business." As further consideration for the purchase price, the respondent agreed to a non-compete provision, which the appellants claimed was breached in refusing to pay the balance of the note.

In their sole point on appeal, the appellants claim that the trial court erred in entering summary judgment for the respondent on his suit on the promissory note and guaranty executed by the appellants because he was not entitled to judgment as a matter of law in that the respondent did not allege in his motion, as required of a claimant, undisputed material facts negating the appellants' affirmative defense that there was a failure of consideration for the note.

We reverse and remand.

## Facts

On February 1, 1993, the respondent, as president of Frank Mobley Insurance Agency, Inc. (FMIA), entered into a purchase agreement with Baker, in his capacity as president of BMI, to sell FMIA's customer accounts and other business assets to BMI. The purchase agreement included a covenant not to compete, which reads, in pertinent part:

for a period of ten (10) years from and after the date of closing [Seller] will not within a radius of two hundred (200) miles from Seller's place of business at 2700 Rockcreek Parkway, North Kansas City, Missouri, engage directly or indirectly, own, control, participate in, or be connected in any manner with the own-

ership, financial backing or control of any business that contacts or solicits business from those customers or accounts sold by this Agreement ... except for purposes of continuing the business relationship between these customers and Buyer.

The purchase agreement also provided that Baker, both as a personal guarantor, and on behalf of BMI, would execute a promissory note payable to the respondent in satisfaction of the agreed-upon purchase price of $150,000. The purchase agreement further provided that BMI would make monthly payments on the note for a period of 120 months, beginning on March 20, 1993, and ending on March 20, 2003. The note was executed by Baker, both individually and on behalf of BMI as agreed, and delivered to the respondent on the same date as the execution of the purchase agreement.

BMI made the required payments under the note from March 20, 1993, through December 20, 1997. It stopped making payments thereafter, claiming that the respondent had breached the non-compete provision of the underlying purchase agreement. As a consequence, the respondent, on June 15, 1998, brought suit against both BMI and Baker to collect the balance due on the promissory note, seeking $93,936.18 plus interest, and his expenses and costs in collecting on the note, as provided therein. The appellants filed a responsive pleading consisting of an answer and counterclaim. In their answer, the appellants asserted the affirmative defense of failure of consideration.

On June 14, 1999, the respondent filed a motion for summary judgment on his suit on the note. On the same date, he also filed a motion for summary judgment on the appellants' counterclaim, alleging that he was entitled to judgment as a matter of law as to their counterclaim asserted on

the alternative theories of breach of contract, fraud, and tortious interference because each required proof that the appellants had been damaged as a precondition to recovery, and they could never make such a showing. On July 20, 1999, after the expiration of the thirty-day deadline to respond to the respondent's motions for summary judgment, the appellants filed a motion to extend the time to file their response, which was denied.

On July 27, 1999, the respondent's motions for summary judgment were taken up for hearing by the trial court. Before the court heard arguments on the motions, however, the appellants dismissed their counterclaim, mooting the respondent's motion thereon. The trial court then proceeded to hear the respondent's motion as to his claim on the promissory note and guaranty. The motion was sustained with summary judgment being entered for the respondent against the appellants for $130,880.86, with post-judgment interest at the rate of 9% per annum.[1]

### Appellate Jurisdiction

■ Before addressing the merits of the appellants' appeal, we are required to determine our jurisdiction *sua sponte.* *Chromalloy Am. Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 3 (Mo. *banc* 1997). In that regard, we note the apparent deficiency of the appellants' jurisdictional statement. A deficient jurisdictional statement fails to invoke this court's jurisdiction. *Giesler v. Burlington N. R.R. Co.,* 791 S.W.2d 491, 492 (Mo.App.1990).

Rule 84.04(b)[2] governs the requirements of the jurisdictional statement in the appellants' brief and reads:

Bare recitals that jurisdiction is invoked "on the ground that the construction of the Constitution of the United States or of this state is involved" or similar statements or conclusions are insufficient as jurisdictional statements. The jurisdictional statement shall set forth sufficient factual data to demonstrate the applicability of the particular provision or provisions of Article V, Section 3, of the Constitution whereon jurisdiction is sought to be predicated.

The appellants' jurisdictional statement reads:

Appellant appeals from a final Judgment of the Circuit Court of Jackson County, Missouri in a civil cause. This appeal is taken as a matter of right under the Missouri Constitution, Article V, § 3.

The appellants' jurisdictional statement does not comply with Rule 84.04(b) in that it is a bare recital of our jurisdiction being invoked without setting forth any facts as to why. In addition, it does not clearly identify what final, appealable judgment of the Circuit Court of Jackson County is being appealed.

■ Although the appellants' violation of Rule 84.04 is a sufficient basis upon which to dismiss their appeal, we decline to do so because we are readily able to determine our jurisdiction from the record and their brief and because it is our preference to dispose of cases on the merits rather than to dismiss them for deficiencies in the briefs, *Robin Farms, Inc. v. Bartholome,* 989 S.W.2d 238, 245 (Mo.App.

---

1. Pursuant to the terms of the note and the guaranty, which provided for the collection of principal, interest, costs, and reasonable attorney's fees, the total award consisted of the $93,936.19 due on the promissory note, plus prejudgment interest in the amount of $13,385.88, and costs and attorney's fees in the amount of $23,558.79.

2. All rule references are to Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

1999), so long as we are not put in the position of becoming advocates by having to search the record to compensate for deficiencies in a brief. *Myrick v. E. Broad., Inc.* 970 S.W.2d 885, 886 (Mo.App. 1998). However, our decision to review on the merits here should not be construed as a signal that this court will in every case ignore the requirements of Rule 84.04(b). We caution counsel to become conversant with the requirements of the rule and to faithfully abide by them in future briefs.

## Standard of Review

In reviewing the grant of summary judgment:

[o]ur review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

## I.

In their sole point on appeal, the appellants claim that the trial court erred in entering summary judgment for the respondent on his suit to collect on the promissory note and guaranty executed by the appellants because the respondent was not entitled to judgment as a matter of law in that the respondent did not allege in his motion, as required of a claimant, undisputed material facts negating the appellants' affirmative defense that there was a failure of consideration for payment of the note. Specifically, the appellants claim that the respondent failed to allege material facts negating their affirmative defense that the respondent had breached the covenant not to compete in the underlying purchase agreement in that the respondent solicited the business of one of the accounts sold to the appellants.

To be entitled to summary judgment under Rule 74.04, the movant must establish that (1) there is no genuine dispute as to the material facts on which he relies for summary judgment, and that (2) based on these undisputed facts, he is entitled to judgment as a matter of law. *ITT Commercial Fin.,* 854 S.W.2d at 380. Where the movant is a claimant, as in our case, to make a *prima facie* case for summary judgment, he is required to state with particularity in his motion all the undisputed material facts necessary to establish each and every element of his claim, referencing the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to those facts. Rule 74.04(c)(1); *ITT Commercial Fin.,* 854 S.W.2d at 381.

As a movant/claimant, the respondent was required to plead all the

facts necessary to establish each and every element of his suit on the note, the requisite elements being that: (1) there exists a valid promissory note signed by the maker; (2) there remains a balance due on the note; and (3) demand on the maker for payment has been made and refused, leaving the maker in default. *Curnutt v. Scott Melvin Transp., Inc.,* 903 S.W.2d 184, 190 (Mo.App.1995). A person suing on a note is not required to prove consideration in that the signing of the note creates a presumption that consideration existed for it. *MFA Inc. v. Dettler,* 817 S.W.2d 658, 665–66 (Mo.App.1991); § 431.020. That presumption, however, can be overcome by showing that there was a "lack" of consideration or a "failure" of consideration. *MFA Inc.,* 817 S.W.2d at 666. "Failure" of consideration implies that consideration, once existing and sufficient, had become worthless or ceased to exist, which distinguishes it from "lack" of consideration. *Ryan v. Tinker,* 744 S.W.2d 502, 505 (Mo. App.1988). In our case, the appellants are asserting that there was a "failure" of the consideration agreed upon by the respondent in exchange for BMI's note in that he breached the covenant not to compete by soliciting the business of one of the accounts he had sold to the appellants. Such a defense is an affirmative defense, which must be pled in the answer to the suit or is waived. *Diversified Metal Fabricators, Inc. v. Blue Skies, Inc.,* 899 S.W.2d 556, 561–62 (Mo.App.1995).

 Where the non-movant has properly pleaded an affirmative defense, a movant's right to summary judgment depends just as much on the non-viability of that affirmative defense as it does on the viability of the movant's claim. *ITT Commercial Fin.,* 854 S.W.2d at 381. It does not matter that the non-movant will bear the burden on this issue at trial:

[A] claimant moving for summary judgment in the face of an affirmative defense must also establish that the affirmative defense fails as a matter of law. Unlike the burden of establishing all of the facts necessary to his claim, however, the claimant may defeat an affirmative defense by establishing that any one of the facts necessary to support the defense is absent. At this stage of the proceeding, the analysis centers on Rule 74.04(c); it is irrelevant what the non-movant has or has not said or done.

*Id.* Thus, if, in fact, the appellants have pled the affirmative defense of failed consideration for the note, as they contend on appeal, to make a *prima facie* case for summary judgment on the note and guaranty, the respondent was required to plead not only undisputed facts establishing the elements of his claim, but undisputed facts negating the appellants' affirmative defense. *Rodgers v. Threlkeld,* 22 S.W.3d 706, 710 (Mo.App.1999). It is the respondent's contention, however, that the affirmative defense of failed consideration was not properly pled by the appellants, which would relieve him of the burden of alleging facts negating that defense. Thus, in determining whether the respondent pled in his motion sufficient undisputed facts entitling him to judgment as a matter of law on his claim, we must first determine whether the appellants properly pled as an affirmative defense a failure of consideration for the note.

 An affirmative defense seeks to defeat or avoid the plaintiff's cause of action, and avers that even if the allegations of the petition are taken as true, the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid the legal responsibility alleged. *ITT Commercial Fin.,* 854 S.W.2d at 383. An affirmative defense must be pleaded in

the answer to the suit; otherwise it is waived. *Diversified Metal Fabricators,* 899 S.W.2d at 561–62. In order to properly plead an affirmative defense, Rule 55.08 requires the pleading to "contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." Rule 55.08; *Bus. Men's Assurance Co. of Am. v. Graham,* 891 S.W.2d 438, 448 (Mo.App.1994). Because the purpose of Rule 55.08 is to provide notice to the plaintiff so the plaintiff can be prepared for trial on the issues, the facts supporting an affirmative defense must be pled in the same manner as required in alleging a claim such that mere conclusory allegations are insufficient. *Bus. Men's Assurance Co. of Am.,* 891 S.W.2d at 448. Requiring a claimant to negate mere conclusory allegations with respect to an affirmative defense as a prerequisite to establishing a *prima facie* case for summary judgment would require the movant to first make the non-movant's case and then defeat it. *ITT Commercial Fin.,* 854 S.W.2d at 384. Thus, where the affirmative defense, as pleaded, is insufficient as a matter of law, the movant/claimant is not required to negate it in order to make a *prima facie* case for summary judgment. *Ashland Oil, Inc. v. Warmann,* 869 S.W.2d 910, 912 (Mo.App.1994).

■ In the appellants' answer to the respondent's petition, they alleged in paragraph 12 that "plaintiff's claims are barred by lack of consideration and failure of consideration." The respondent contends that this allegation was insufficient to satisfy the requirements of Rule 55.08 in that it was conclusory in nature and failed to set forth any facts showing that the appellants were entitled to the defense alleged. We would agree. However, in determining the sufficiency of the allegations setting forth the appellants' affirmative defense, we may look to the responsive pleadings as a whole, which would include the appellants' counterclaim. *See Tindall v. Holder,* 892 S.W.2d 314, 325 (Mo.App.1994) (holding that factual allegations in plaintiff's second amended petition would be treated as part of plaintiff's allegations as affirmative defenses to counterclaim; the allegations were pled with the specificity required by pleading rules, as they were sufficient to notify counterclaimant of issues, thus, allowing him to prepare).

■ Here, reading the appellants' responsive pleadings as a whole, it is clear that they were asserting the affirmative defense of failed consideration based upon the factual allegation that the respondent had breached the non-compete provision of the underlying purchase agreement by soliciting business from an insurance account sold to BMI. In that regard, their counterclaim included counts for breach of contract, injunctive relief, fraud, and tortious interference with contract, based upon the factual allegation that the respondent had "breached paragraph 20 [the non-compete provision] of the purchase agreement" when he "contacted and solicited business from those customers or accounts sold to [the appellant] in this agreement." In addition, in paragraph 13 of the appellants' answer, they asserted that "the plaintiff's prior breach of the purchase agreement excuses defendant from any further obligation to plaintiff or performance under the agreement." While the appellants' answer was not a model of pleading an affirmative defense, when read with their counterclaim, there is no question that the respondent was on notice of the factual basis on which the appellants were relying for their affirmative defense of failed consideration so that the respondent could prepare for trial on those issues. As a further basis for finding that the affirmative defense of failed consideration was properly pled, we would note that the re-

spondent never raised this issue with the trial court by filing a motion for a more definite statement pursuant to Rule 55.27(d), and by failing to do so, the respondent is deemed to have waived any complaint as to the insufficiency of the appellants' pleadings to assert the affirmative defense of failed consideration. *Id.* at 325–26; *Bus. Men's Assurance Co. of Am.*, 891 S.W.2d at 448. Hence, the affirmative defense of failed consideration was sufficiently pled, meaning that the respondent was required to plead facts negating it in order to make a *prima facie* case for summary judgment.

In determining that the appellants properly pled their affirmative defense, we are cognizant of the fact that they dismissed their counterclaim on the day that the respondent's motion for summary judgment was heard. We are also aware that, for the purposes of whether a trial court has jurisdiction to take any further steps as to the dismissed action, it is as if the suit were never brought. *Samland v. J. White Transp. Co., Inc.*, 675 S.W.2d 92, 96 (Mo.App.1984). Here, however, the issue is not whether the trial court could act on the appellants' counterclaim, but whether the allegations contained in their counterclaim, when read with their answer, were sufficient to put the respondent on notice of the factual basis on which the appellants were relying for their affirmative defense of failed consideration. For that purpose, we can rely on the appellants' pleadings with respect to the counterclaim.

█ Having determined that the appellants sufficiently pled the affirmative defense of failed consideration, the respondent, to make a *prima facie* case for summary judgment, was required to "state with particularity in separately numbered paragraphs each material fact as to which [he claimed] there is no genuine issue," Rule 74.04(c)(1), to negate the appellants'

affirmative defense of failed consideration. The motion itself must set out the necessary facts to comply with Rule 74.04(c)(1). *Midwest Precision Casting Co. v. Microdyne, Inc.*, 965 S.W.2d 393, 395 (Mo.App. 1998). It is insufficient that such facts are articulated in an accompanying affidavit. *Id.*

█ Having reviewed the respondent's motion, it is clear that the only factual allegations contained therein are those necessary to establish the elements of his suit on the note. There are no facts alleged in the motion which would negate the appellants' affirmative defense of failed consideration. None speak to the respondent's alleged failure to comply with the covenant not to compete in the underlying purchase agreement. In failing to allege specific facts in his motion for summary judgment sufficient to negate the appellants' affirmative defense, the respondent failed to make a *prima facie* case for summary judgment, requiring us to reverse the summary judgment for the respondent. Rule 74.04(c)(1); *ITT Commercial Fin.*, 854 S.W.2d at 381; *Midwest Precision Casting*, 965 S.W.2d at 394.

### Conclusion

The circuit court's summary judgment for the respondent on his suit to recover on the promissory note is reversed and the cause remanded for further proceedings in accordance with this opinion.

SPINDEN, C.J., and NEWTON, J., concur.